# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1091-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. RODRIGUEZ,
a/k/a FREDDIE,
LUIS RODRIGUEZ,
LUIS RODREQUEZ,
LOUIS RODRIGUEZ,
FREDDY RODRIGUEZ,
FREDDIE RODRIGUEZ,
FREDDY RODRIQUEZ,
FREDED RODRIQUEZ,
LUIS A. RODRIQUEZ,
FREDDIE RORIGUEZ, and
FREDDIE CHEO,

_____

Submitted January 18, 2024 – Decided February 2, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 11-01-0124.

Joseph E. Krakora, Public Defender, attorney for appellant (John Joseph Bannan, Designated Counsel, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda Do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Luis Rodriguez appeals from a September 16, 2022 order denying his subsequent petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant contends his trial, appellate, and first PCR counsel rendered ineffective assistance. Judge Michael A. Guadagno thoroughly considered defendant's contentions and issued a comprehensive written decision, with which we substantially agree. We affirm.

## I.

In January 2011, a Monmouth County grand jury charged defendant with third-degree burglary, third-degree attempted aggravated criminal sexual contact, third-degree attempted aggravated sexual assault, second-degree sexual assault, third-degree endangering the welfare of a child, third-degree terroristic threats, third-degree aggravated assault, and third-degree aggravated assault on a police officer regarding two incidents that occurred on August 14, 2009.

The first incident took place at 2:00 a.m. Defendant entered his neighbor's apartment in Long Branch and stood near her bed while masturbating. When the neighbor, who was also an acquaintance, questioned defendant about what he was doing, he confessed that he loved her. The neighbor escorted defendant out of her apartment but was unable to immediately call the police because her cell phone was out of minutes, and she could not leave her son alone in the apartment. The next day, the neighbor went to the Long Branch Police Department, gave a statement to Detective Juan Vasquez, and identified defendant from a photo lineup.

The second incident occurred after defendant left the neighbor's apartment and went to another neighbor's apartment. At 3:30 a.m., twelve-year-old L.O.[1] woke up and found defendant inside the bedroom she shared with her ten-year-old brother T.O. Defendant was laying in L.O.'s bed—the bottom of a bunk bed—and touched her inner thigh. Defendant put his hand over L.O.'s mouth to keep her quiet and told her several times that if she did not remain quiet, he would kill her. T.O. awoke and illuminated the bedroom using a gaming device,

---

[1] We use initials to protect the confidentiality and identity of the minor victims. R. 1:38-3(c)(9).

which enabled him to see defendant was on his sister's bed and touching her. Defendant also told T.O. to remain quiet or he would kill him.

L.O. yelled and her father, F.O., came into the children's bedroom. A fight ensued between F.O. and defendant resulting in defendant fracturing F.O.'s nose. F.O. also sprained his ankle during the struggle. L.O. called 9-1-1. Despite his injuries, F.O. was able to detain defendant until the police arrived. The police arrested defendant and retrieved his cell phone and a black hat from the children's bedroom.

L.O. and T.O. gave statements to Detective Shawn Murphy of the Monmouth County Prosecutor's Office, and F.O. provided a statement to Detective Vasquez four days later because he was hospitalized for the injuries he sustained. A SANE (Sexual Assault Nurse Examiner) examination was not performed on L.O. because the incident occurred during her menstrual cycle, and defendant's assault did not involve any type of penetration.

Defendant provided a statement to the police. He admitted to entering F.O.'s residence but initially denied entering the children's bedroom. However, defendant later claimed he entered their bedroom after seeing three black males enter the apartment. According to defendant, he assumed the men were there to collect money from F.O. Defendant claimed F.O. started the altercation with

4

him because F.O. thought defendant was one of the intruders and F.O. planted his cell phone in the children's bedroom.

Following pre-trial motion practice and the plea-cutoff date, the matter was marked ready for trial. Defendant petitioned the trial court to enter a guilty plea after the plea-cutoff date, which was granted. Defendant agreed to plead guilty to third-degree burglary and second-degree sexual assault in exchange for an aggregate six-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, followed by three years of parole. At the plea allocution hearing, plea counsel represented to the trial court that he had "gone over . . . all of the discovery in this matter" with defendant and they had "spent numerous hours, even today, going through everything to determine what is best for him." Plea counsel stated to the trial court that defendant "wishes to enter a plea at this time to the deal that was put on . . . the record by the State."

During his plea colloquy with the trial court, defendant agreed with his plea counsel's representations and stated he was "satisfied with the legal advice [he] received from" his plea counsel. Defendant testified he entered two Long Branch residences on August 14, 2009, at approximately 2:00 a.m., without permission, in support of the factual basis supporting his guilty plea with "the purpose to commit a crime therein." He also admitted touching L.O.'s upper

thigh. Defendant testified that his plea was freely and voluntarily made, and he acknowledged that absent a plea agreement, he faced up to fifteen years in prison. The trial court noted plea counsel had "done a lot of work in the matter" since entering the case "over the last number of months."

At sentencing, defendant indicated he "was looking to withdraw his guilty plea." However, during a colloquy with the sentencing court, defendant stated he did not want to vacate his guilty plea and chose to proceed to sentencing. Prior to sentencing, the assistant prosecutor discussed the victim impact statement provided by L.O.'s family, which detailed the "fear" the family continued to have as a result of defendant's conduct. The prosecutor also reminded the court about the testimony from the first victim given during a pretrial motion hearing, in which she stated she no longer felt safe in her home, she installed four deadbolts on her front and back doors, does not leave the windows open in the summertime, and is afraid when sleeping.

In addition, the children said they don't like to go outside and are afraid to walk to school alone. L.O. indicated she feels embarrassed because individuals at her school are aware of what took place and ask her how she's doing.

A-1091-22

The sentencing court imposed the sentence contemplated in the plea agreement, subject to Megan's Law, N.J.S.A. 2C:7-1 to -23, Parole Supervision for Life, N.J.S.A. 2C:43-6.4, a no contact order, a psychiatric and drug evaluation upon release, and the requisite fines. Defendant acknowledged he could be confined to the Adult Diagnostic and Treatment Center in Avenel. Defendant appealed his sentence, which was heard on our Sentencing Oral Argument calendar pursuant to Rule 2:9-11. On February 11, 2014, we affirmed defendant's sentence. State v. Rodriguez, No. A-1470-13 (App. Div. Feb. 11, 2014).

On February 12, 2016, defendant filed his first pro se PCR petition. PCR counsel was assigned, and an amended petition and a supporting brief was filed raising six claims of ineffective assistance by plea and appellate counsel: (1) trial counsel was ineffective for failing to allow defendant to withdraw his guilty plea before sentencing; (2) trial counsel failed to advise defendant of the consequences of his guilty plea, specifically that he could be civilly committed after serving his prison sentence; (3) trial counsel was ineffective for not having a Spanish interpreter present during counsel's communications with defendant; (4) appellate counsel was ineffective for failing to bring the claims set forth in the PCR; (5) there was an insufficient factual basis for defendant's guilty plea;

and (6) the sentence was illegal because it double counted defendant's prison sentence and his civil commitment.

On February 23, 2018, the prior PCR court heard oral argument on defendant's first PCR petition. On March 2, 2018, the PCR court denied the petition without an evidentiary hearing, noting the petition was procedurally barred but the PCR court nonetheless addressed and rejected defendant's substantive claims. Defendant appealed the denial of his first PCR petition. We affirmed and concluded defendant failed to present a prima facie case of ineffective assistance of counsel. State v. Rodriguez, No. A-4333-17 (App. Div. Oct. 11, 2019).

In our decision, we determined that "[d]efense counsel and the plea judge both carefully went through the plea and supplemental forms with defendant." Ibid. In addition, we noted a Spanish interpreter was used during the plea proceedings and that defendant "advised he had read the forms, counsel had gone over them with him, and [defendant] told the judge he did not have any questions specifically as to the condition of civil commitment." Id., slip op. at 6.

Defendant filed a second PCR and requested appointment of counsel while his first PCR was pending. On July 24, 2018, the PCR court denied defendant's

application for assignment of counsel and dismissed the second petition pursuant

to Rule 3:22-4(b)(2),[2] because good cause had not been shown.

_____

[2] The Rule provides:

> (b) Second or Subsequent Petition for [PCR]. A second or subsequent petition for [PCR] shall be dismissed unless:
>
> . . .
>
> (2) it alleges on its face either:
>
> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or
>
> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or
>
> (C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].
>
> [Rule 3:22-4(b)(2).]

A-1091-22

Defendant also pursued federal litigation while the first PCR petition was pending. The United States District Court for New Jersey denied the petition for a writ of habeas corpus and subsequent motion for reconsideration.[3]

Defendant filed a third pro se PCR petition, which was dismissed on January 4, 2021, on the basis the claims he asserted had already been adjudicated.[4] On February 25, 2021, defendant then filed his subsequent PCR petition, which is the subject of this appeal. In his petition, defendant claimed his plea counsel was ineffective because plea counsel: (1) had failed to inform him that there was no "victim statement" or a medical report that indicated trauma to the victim (L.O.); (2) plea counsel did not interview the victim; the victim's brother and father failed to give statements to the police; and (3) plea counsel pressured defendant into accepting the guilty plea.

PCR counsel was assigned and filed a brief, which raised the following additional points:

POINT I

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL

---

[3] Defendant's second writ for habeas corpus was also dismissed.

[4] During the pendency, defendant filed six PCR petitions, which were all dismissed.

CONSTITUTIONALLY GUARANTEED TO HIM BY THE U.S. AND STATE CONSTITUTIONS.

A. TRIAL COUNSEL'S INEFFECTIVE REPRESENTATION DURING THE PRETRIAL PROCEEDINGS IMPACTED THE PLEA PROCESS CAUSING DEFENDANT SUBSTANTIAL PREJUDICE.

B. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PERSUADE THE COURT TO APPLY MITIGATING FACTORS IN SENTENCING DEFENDANT.

C. APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE VARIOUS ISSUES ON DIRECT APPEAL.

POINT II

THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE AND/OR UNCONSTITUTIONAL.

POINT III

PETITIONER'S CLAIMS ARE NOT BARRED PROCEDURALLY FROM BEING RAISED IN THIS PETITION FOR [PCR].

POINT IV

PETITIONER HAS ESTABLISHED A PRIMA FACIE CASE SUFFICIENT TO REQUIRE AN EVIDENTIARY HEARING.

POINT V

PCR INCORPORATES BY REFERENCE ALL
ISSUES RAISED BY PETITIONER IN HIS
PETITION.

POINT VI

THE ERRORS OF COUNSEL IN THIS MATTER
WERE SO BAD THAT ACTUAL PREJUDICE NEED
NOT BE SHOWN.

POINT VII

THE EFFECT OF THE CUMULATIVE ERRORS IN
THIS MATTER RENDERED THE RESULT IN
VIOLATION OF PETITIONER'S SIXTH
AMENDMENT RIGHT TO EFFECTIVE COUNSEL.

Following oral argument, Judge Guadagno issued a written decision

denying defendant's subsequent PCR petition without an evidentiary hearing.

The judge found all claims of ineffective assistance of first PCR counsel were

procedurally barred under Rule 3:22-4(b)(1) because the claims were untimely

under Rule 3:22-12(a)(2)(A).  In addition, the judge found all other claims failed

to meet the requirements of Rule 3:22-4(b)(2)(C), as they alleged only the

ineffective assistance of plea and appellate counsel, and not PCR counsel.

Judge Guadagno noted that by his "count, this represents the ninth time

defendant has sought review of his conviction by state or federal courts."  The

judge explained that even if he were to consider defendant's claims of ineffective

12

assistance, "most of them have been previously decided; the others lack merit." The judge determined defendant's claim that "errors of counsel (presumably plea counsel) were so bad that actual prejudice need not be shown" was not supported by the record "or in our jurisprudence." The judge denied defendant's subsequent petition as both time-barred and lacking in substantive merit because defendant failed to establish a prima facie case of ineffective assistance of trial, appellate, or PCR counsel. A memorializing order was entered. This appeal followed.

Defendant raises the following arguments for our consideration:

> POINT I
>
> PETITIONER'S CLAIMS ARE NOT PROCEDURALLY BARRED FROM BEING RAISED IN THIS PETITION FOR [PCR].
>
> (A) Defendant's Second PCR Petition Is Timely Pursuant To R[ule] 3:22-4(b) And R[ule] 3:22-12(a)(2).
>
> (B) Petitioner's Claims Are Not Barred By R[ule] 3:22-5.
>
> (C) Petitioner's Claims Are Not Barred By R[ule]3:22-12.
>
> POINT II
>
> BECAUSE [DEFENDANT] RECEIVED INEFFECTIVE ASSISTANCE OF FIRST PCR

13                                                   A-1091-22

COUNSEL, THE PCR COURT ERRED IN DENYING [DEFENDANT'S] SECOND PETITION FOR PCR.

(A) Trial And PCR Counsel's Ineffective Representation During The Pretrial Proceedings Impacted The Plea Process Causing Defendant Substantial Prejudice.

(B) First PCR Counsel Was Ineffective For Failing To Raise The Issue That Trial Counsel Was Ineffective In Failing To Present To The Court Mitigating Factors In Sentencing Or Argue For A Lesser Sentence.

(C) First PCR Counsel Was Ineffective For Failing To Raise The Issue That Appellate Counsel Was Ineffective For Failing To Argue That The Trial Court Did Not Adequately Weigh Sentencing Factors.

POINT III

IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

(A) Legal Standards Governing [PCR] Evidentiary Hearings.

(B) In The Alternative, [Defendant] Is Entitled To An Evidentiary Hearing.

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard also applies to

14                                                              A-1091-22

mixed questions of law and fact.  Id. at 420.  Where an evidentiary hearing has not been held, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court."  Id. at 421.  We apply that standard here.

To establish a prima facie case of ineffective assistance of counsel, defendant must satisfy the two-prong test articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which our Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987).  "First, the defendant must show . . . . counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687).  Defendant must then show counsel's deficient performance prejudiced the defense.  Ibid.  To show prejudice, defendant must establish by "a reasonable probability" that the deficient performance "materially contributed to defendant's conviction . . . ."  Id. at 58.

PCR is New Jersey's analogue to the federal writ of habeas corpus.  State v. Afanador, 151 N.J. 41, 49 (1997) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).  It is the vehicle through which a defendant may, after conviction and sentencing, challenge a judgment of conviction by raising issues that could not have been raised on direct appeal and, therefore, ensures that a defendant was

A-1091-22

not unjustly convicted.  State v. McQuaid, 147 N.J. 464, 482 (1997) (citation omitted).

Judge Guadagno determined defendant's petition is time-barred under Rule 3:22-12(b), which provides the time limitations for filing second or subsequent PCR petitions.  Defendant argues his subsequent PCR petition was timely because it was filed within one year of our decision affirming denial of his first PCR petition.  Defendant contends the issues raised in the PCR petition under review "are of a constitutional nature," and he has satisfied the exceptions under subsections (a), (b), and (c) of Rule 3:22-4.  Defendant also asserts his ineffective assistance of counsel claim against his first PCR counsel and appellate counsel is allowed under Rule 3:22-4(b)(2)(C).  We are unpersuaded.

The rules governing PCR petitions are set forth in Rule 3:22.  Second or subsequent PCR petitions must comply with the requirements of Rule 3:22-4(b) and Rule 3:22-12(a)(2).  To avoid dismissal of a second—or subsequent—PCR petition, as stated, a defendant must present evidence to satisfy one of three enumerated exceptions: a new rule of law, newly discovered evidence, or ineffective assistance of prior PCR counsel.  R. 3:22-4(b)(2).  Defendant simply makes bald assertions and has not presented any facts in an affidavit or certification to support his subsequent PCR petition.  Even when a defendant's

PCR contentions fit within these exceptions, a second or subsequent PCR petition must be timely filed. R. 3:22-4(b)(1).

Rule 3:22-12 prescribes the time limitations for PCR. As applicable in this case, Rule 3:22-12(a)(2)(C) provides "no second or subsequent petition shall be filed more than one year after . . . the date of the denial of the first . . . application for [PCR]" based on ineffective assistance of counsel. Defendant's subsequent PCR petition was filed more than one year after the denial of his first PCR application. Defendant was required to file the PCR under review within one year of March 2, 2018, the date his first PCR was denied, but he did not file until March 2021, more than three years later.

Unlike Rule 3:22-4(a), Rule 3:22-4(b) contains no "fundamental injustice" exception for second or subsequent PCR petitions. Similarly, there is no fundamental or manifest injustice exception under Rule 3:22-5, which establishes prior rulings on appeal are conclusive and precludes reassertion of litigated issues in a PCR petition.

Defendant contends the issues raised in the petition under review are of a constitutional nature, and the allegations of ineffective assistance are "clearly proper" under Rule 3:22-4(a) (b) and (c). We reject defendant's argument because he does not articulate any constitutional issues or cite any case law to

A-1091-22

support his position. Moreover, we reject defendant's assertion that the two "second or subsequent" PCRs filed within one year of March 2018 satisfies Rule 3:22-4 because the prior PCR court dismissed both petitions for not alleging grounds upon which a second or subsequent petition can be based under Rule 3:22-4(b)(2), and for not demonstrating good cause under Rule 3:22-4(b)(2). Judge Guadagno correctly held the dismissal of defendant's non-compliant PCR filings could not be used as a basis to render the March 2021 petition timely.

We also reject defendant's arguments because we are satisfied he has not presented that rare case requiring relief from the procedural limitations imposed on second or subsequent PCR petitions. Moreover, Judge Guadagno correctly determined that notwithstanding the untimely filing of defendant's PCR under review, the allegations set forth therein did not satisfy the second requirement of Rule 3:22-4(b)(2) and were independently subject to dismissal.

Defendant failed to establish his subsequent PCR petition was timely and also failed to establish that the performance of his plea, appellate, and PCR counsel was substandard, or but for any of the alleged errors, the result would have been different. See Strickland, 466 U.S. at 687-88. As a result, he was not entitled to an evidentiary hearing. Preciose, 129 N.J. at 463; R. 3:22-10(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1091-22